Good morning, Your Honors. My name is Robert Powell, appearing here on behalf of Ms. Carrillo. I would like to reserve two minutes by way of rebuttal. Ms. Carrillo is a 53-year-old woman. She's lived in the United States. She's been in the United States continuously since September of 1997, and she's applying for adjustment of status based on her marriage to her permanent resident husband. Isn't that actually the problem, is that she has, in fact, been here during all that time, as opposed to being outside the United States? No, that's not quite correct. That's not really the problem, or shouldn't be, anyway. She's been here, yes, since September of 1997, unlawfully, but of course she's eligible for adjustment of status under Section 245I because the petition for her was filed before April 30th of 2000. The questions of whether she's admissible or not go to this question of how long she's been in the United States. There are two separate provisions, I think, that we need to talk about, and let's make sure that we're talking about the right one. They're both in USC Section 1182 and in Subsection 9C, and the two I'll call them C1, which relates to unlawful presence, and C2, which relates to an alleged prior deportation. So with respect to C1, yes, she's been here in the United States without status for that period of time, but she has not, since IAR was enacted, since September of 1997, she has not left the United States and attempted to return unlawfully. Very clear that if we're just looking at the time since September of 1997, she would not be inadmissible under either of those provisions, either C1 or C2. The only way that she would be inadmissible would be if she had, after she came here in September 1997, if she had left the United States and then reentered unlawfully. That's what all the case laws about, the Briones case and the matter of Diaz and Lopez and so on, they're all about situations where a person was here unlawfully for a period of time after IAR was enacted and then left and then reentered unlawfully. Are you aware of any case before this one that involves a situation where the person has been continuously present in the United States for more than 10 years? In other words, you were just distinguishing the other cases as involving people who had less than 10 years since their last departure, which is the exception in Part C of the statute that you're talking about. Clause little I shall not apply to an alien seeking admission more than 10 years after the date of the last departure, et cetera. So that 10 years seems to make a difference since the last departure. Yes, I think that if a person is inadmissible under C1 or C2 and needs the waiver, then there's a question, well, if it's been more than 10 years since the last departure, which in this case was 1992, many more than 10 years ago, is the person eligible for the waiver? In answer to your question, no. I don't believe that any case has resolved that issue one way or the other. What I would say is that in the case... Let me just clarify one thing here. As I understand it, your client, her request for the waiver under C2 occurred while she was in the United States and prior to the expiration of the 10-year statutory waiting period. Is that correct? No, that's not right. Her last departure from the United States was in 1992. Then she re-entered in September of 1997, and she's been here ever since. Okay, and when did she request the waiver? In front of the immigration judge, which was November 2007. 2007, okay. And she did not request it before? She filed the application in connection with the removal proceedings, but no, she first filed that waiver application in front of the immigration judge. Quite frankly, I'm not sure if that was the date that that application was filed, but it was certainly considered by the immigration judge. She made her request for that to the immigration judge in that hearing in September of 2007. Counsel, let me ask you a question. I have a problem with this 1182, double I, where it says the application must be made prior to re-embarkation. We're at a place outside of the United States. The petitioner in this case was here in the United States, right? Yeah. At the time that the application was made. Yeah. What I would say in response to two points, first of all, that language about applying prior to re-embarkation is the same language that appears in Section 212A9A, the same waiver provision there. The Board of Immigration case law makes it clear that that application can be filed when the person is inside the United States, after the person has crossed the border into the United States. Now, where is that? The one case that is cited in the briefing is called Matter of Lee, L-E-E, a case in which it's clear that person inside the United States can apply for that waiver and that can be granted even. But that's contrary to congressional enactment. I mean, that's pretty clear. 1182 says prior to re-embarkation. There's no ambiguity about that. But it's important to notice that language requires the consent of the Attorney General or the Department of Homeland Security, but it does not require that the waiver application actually be filed before the person leaves. I think that's the point of the regulations that allow this and also the precedent decisions issued by the Board of Immigration Appeals is that consent can be granted retroactively. There's no requirement in the statute that the application actually be filed prior to re-embarkation. And, again, it's well established in the case law precedent board decision affirmed by the Ninth Circuit case law that this application can actually be filed after the person is inside the United States, even though the consent is given retroactively. What case law do you rely upon for that? The Matter of Lee, L-E-E, is one case. The regulations also – Is that a BIA case or our case? No, that's a BIA case. Okay, I'm asking for our authority. I thought you said Ninth Circuit authority. Yeah, there is one. This has not actually been cited in the briefing, but one case I'm aware of is called Dragon, D-R-A-G-O-N, versus Immigration Service. And what's the cite on that? It's a Ninth Circuit case. Could you obtain that citation and supply it to the court and opposing counsel? Sure. The other thing that I would point out, and this is mentioned in the briefing, is that the regulations also allow for the application to be filed once the person is inside the United States. So the governing regulations, 8 CFR section 212.2, and in particular subsections E and I, specifically allow for that application to be filed. But can an administrative agency override clear congressional mandate by regulation? I think that's the point, is that the regulations are consistent with the congressional statute because the statute – you know, Congress, when Congress wants an application to be filed before something happens, Congress knows how to write a statute that way. You know, there are several provisions which say that an application has to be filed before something happened. In this case, it's not the application that has to be filed beforehand. It's the consent that has to be given, and the consent can be given retroactively. Well, how does that make sense? I mean, if you can give consent retroactively, then why would you have to have it prior to embarkation? Well, that's the effect of that decision. When the application is filed and approved under the regulations, the regulations state that the consent is given, you know, this application is approved retroactively. I suppose I don't see any inconsistency with the congressional – and that interpretation has been around for about 50 years, and Congress has never done anything to indicate that it's unsatisfied with that way of interpreting the statute. But if I can make a couple more – I do not think that the waiver, or this waiver, is even necessary in this case for a couple reasons. First of all, that waiver is only necessary where a person has been previously deported from the United States. Ms. Carrillo was never deported from the United States. Well, but that seems to read out the first half, which is has been unlawfully present for an aggregate period of more than one year or has been removed. That's an or, not an and. Correct. And, in fact, she was ordered removed. Well, I would like to differ. I would like to explain that, Your Honor. She was not ordered removed. If you look at the removal order, the order of the immigration judge – so we're looking back to December of 1983, right, in the administrative record, page 291. What the judge states, what that judge states is that it is ordered that in lieu of an order of deportation, the individual is given voluntary departure. But it also, in the December 1984 departure warrant, states on its face, in quotes, an order has been duly made that the alien Carrillo de Palacios, Matilda, is subject to deportation under INA 241A2. So what's that order they're talking about? The order that they're talking about is this decision of the immigration judge. So, in effect, the immigration officer that signed off on that warrant in December of 1984. Well, isn't she really just saying she should not have been ordered because she was prepared to depart voluntarily, but the record, in fact, shows that she was ordered to depart? She was ordered. So in lieu of an order of deportation, an order of deportation was not entered. That order also says that if the individual fails to depart, then it converts into an order of deportation, but the evidence shows that she departed on time. And so that order, there was never an order of deportation that was entered against her. And so in answer to your question, the immigration officer, it's not an immigration judge, but some immigration officer that signs off on this execution simply made a mistake. That officer didn't recognize that there was no order. Can you attack that 20 years later? Well, yeah, of course. I mean, the record before the immigration judge provides evidence that that happened. I'm sorry. Go ahead. I just, I never really felt like I got an answer to my question about part, the first part, whether she's been unlawfully present for an aggregate period of more than one year because I thought you started your argument by saying she was here unlawfully for 10 years plus. So why isn't that an aggregate period more than one year? Yeah, so the unlawful presence, so with respect to C1, the only way that's triggered is if the person has unlawful presence for more than a year and then departs the United States and reenters unlawfully. Now, in this case, what the government argues is that the unlawful presence happened before Aira. They claim that she was present here in 1983, 1984, more than a year, and then she left and then she reentered the United States. So they're counting the unlawful presence before April 1, 1997. Well, what's wrong with what I asked you? She was here between 1997 and 2007. Wasn't that unlawful presence? Okay, but she's not departed the United States and reentered unlawfully after that. The only way – Oh, I see what you're saying. She left in 1992 and came back, though. In 1997. Okay, but why does that have to follow? You're saying that you have to have the entry first and the unlawful presence. That doesn't – I'm not following this, I guess. So the only way Section 212A9C-1 – She entered unlawfully in 1997. Right. Okay, so that takes care of who entered without being admitted, right? She entered without being admitted in September of 1997. Okay, and she was here for 10 years. I don't understand why that doesn't – Because she hasn't departed and reentered the United States. Okay, I understand your position. Yeah, there's no case. And, in fact, the case law all assumes if you look at the case law, which applies this provision, it all makes the point that the person was here after April 1, 1997, and then left and reentered. That's an important part of the factual analysis and the holding in those cases, is that in order to trigger that, the person – they have to point out that the person left the United States after April 1. If you look at Briones, for example, and if you look at the case cited in the 28J letter, the matter of Lopez and Diaz, those cases are all – they make the point that the person left the United States after April 1, 1997, after accruing the unlawful presence after April 1, 1997. Okay, I understand your position. You have exceeded your time by quite a bit. We've used a lot of it, but I'll give you a minute back for rebuttal when the time comes. Thank you. Thank you. Good morning. May it please the Court, Jessica Sherman on behalf of the Respondent. The Board properly determined that Ms. De Palacios was ineligible for adjustment of status because she failed to demonstrate that she was admissible to the United States. She has admittedly reentered the United States illegally on at least five occasions. Based on the record evidence, the agency properly concluded that Ms. De Palacios was inadmissible to the United States on two separate grounds, first she was unlawfully present in the United States for a period of more than one year and she subsequently reentered illegally. And under the statute, the illegal reentry does have to occur afterwards. Afterwards, okay. She was also inadmissible on a separate ground based on reentering the United States illegally after a prior removal order in 1984. I'm going to ask you some questions that we'll assume without necessarily agreeing with you that you're correct about that. But I want to talk about the exception, which people seem to refer to as a waiver, even though it's called an exception, in 1182C to the lies. Clause one shall not apply to an alien seeking admission more than ten years after the date of the alien's last departure from the United States if certain things happen. And I'm struck as opposing counsel is by the fact that the regulation with the identical statutory terminology in 212.2 allows for a retroactive waiver in the sense that one can apply after entry. In other words, the requirement of application for permission before entry can be waived by the secretary. Am I right about the regulations? And if so, why wouldn't that apply here? I'm not sure I entirely followed the argument. Well, let me see if I can be more clear in my question. As I understand it, there's been a long practice of allowing a person to apply for adjustment of status while they're here, even though the statute contains this passage with the wording about prior to reentry, that, in fact, the agency, since at least 1954, has allowed people to apply for adjustment of status while they're in the United States. Am I right about that? Under some circumstances, yes, an alien can apply, but under the I-212 waiver, the statute contemplates that the alien, it's a penalty against the alien. The alien has to remain outside the United States for ten years before they can reenter and seek a waiver of their inadmissibility. In this case, Ms. Day-Palacios did not remain out of the United States for ten years. That's a different question. I guess what I'm saying to you is what concerns me about your position is this. There's been a regulation and a practice that allows a person to seek adjustment of status while they're in the United States, not to make the application prior to reentry, but that requirement has been regularly waived for 60 years or more. Can I just ask this? Do you agree with what Judge Graber just said? Well, there is a provision under 245I to adjudicate adjustment applications, but they have an adjustment application that has to have, or the visa had to have been filed before 2001. That was to deal with the change in the law in order to accommodate people who are in the United States illegally, but not everyone qualifies for adjustment under that provision unless the visa was filed before 2001. That's what Judge Graber is referring to, right? It's this narrow set of circumstances. But my question is about the statutory text, because whether it's a narrow set of circumstances or not, is there something different about the statutory text that's being interpreted there and this section here that says if prior to reembarkation at a place outside the United States, the secretary has consented. Is that the same wording or different wording? I'm still not sure I understand exactly what your question is. I mean, this court has consistently decided that aliens in Ms. Day-Palacios's position are not eligible for a waiver of inadmissibility. In Gonzales, the court held that, and it was affirmed in Morales-Esguerdo. And so Ms. Day-Palacios, under this court's holdings in those cases, isn't eligible for a waiver under any of the provisions because she did not remain outside the United States for 10 years prior to reentering. Did any of those cases involve someone who had waited the full 10 years or more before making the application? Not to my knowledge, but I think if you look at congressional intents and look at the purpose of the statute, it's a clear policy choice by Congress to penalize recidivists and make them wait at least 10 years before they can seek reentry into the United States. It totally conflicts with that intent by allowing somebody to reenter the United States illegally and wait out the 10 years here before they can seek that waiver. The purpose is to make somebody wait outside the United States as a penalty for consistent violations of our immigration laws. Ms. Day-Palacios was burdened to show that she was not inadmissible to the United States, and the agency properly concluded that she was inadmissible on two separate grounds. The court only need to find that one of those grounds was appropriate in order to affirm the decision of the agency. Her inadmissibility on A9C11, based on her unlawful presence, there's two requirements for that. First, she must show that she was unlawfully present for one year, and second, that she subsequently reentered the United States illegally. Here we have that. It's been uncontested in the record that between 1980 and 1984, in the aggregate, she was in the United States illegally for one year and subsequently reentered in 1997. Is there anything disqualifying about that period of time? I wasn't certain that I understood opposing counsel's argument in that regard, but he seemed to suggest that for some reason that I don't quite follow that that period of time doesn't count under the statute. Well, petitioner's argument is that this ground of inadmissibility was enacted by Arrera in 1996, and her unlawful presence occurred before that, but I think it's significant to note that her illegal reentry, which is what made the unlawful presence a ground of inadmissibility, occurred after Arrera was enacted. And so, I mean, if you... Knowledge of the law, based on it being enacted, she knew when she illegally reentered the United States in 1997 that her prior one year of unlawful presence would render her inadmissible and therefore ineligible for adjustment of status. Unlike other sections of 212A9, which have a specific date of which the unlawful presence must occur, 212A9C does not specify that the unlawful presence must occur after the passage of Arrera. However, 212A9B does make that distinction, and I think that Congress's omission of a specific date in 212A9C is purposeful and should be deemed important. And she hasn't provided any explanation of why, you know, with the one year of unlawful presence, subsequent reentry after 1996, why she wouldn't be inadmissible on that ground. As a separate basis, she's also inadmissible based on her illegal reentry after her prior removal. The record clearly shows that there's a removal order issued against her in 1984, so Requirement 1 is met. She subsequently reentered illegally in 1997. Opposing counsel says there is no order. This is simply a reference by a ministerial person to something that's really other than an order, and he mistook it. Is there anything in the record that would substantiate that position? Well, the record clearly shows that she was deported in 1984. She's not challenged that she was deported. This was not a voluntary departure. This was ordered out and removed, right? Correct. And she claimed that she voluntarily departed in 1983 and then subsequently reentered in 1984 and then was removed in 1984 under this removal order. And the immigration judge weighed the evidence before her. Now, this is a post-real ID case because her adjustment application was filed after 2005. And under the Real ID Act, the immigration judge is allowed to weigh credible testimony against other record evidence and find which satisfies the burden of proof. Ms. De Palacios claimed that she was not deported, but the immigration judge weighed that testimony. And if you look at the record, her testimony about what happened in 1983 and 1984 is very unclear and vague. And the immigration judge weighed that vague and uncorroborated testimony against DHS's evidence that she was indeed deported in 1984. The immigration judge found that DHS's evidence was more convincing. And that's a factual finding that Ms. De Palacios would have to show that the record would compel a contrary finding in order for this court to overturn that. It was Ms. De Palacios's burden to show that she was not inadmissible on either of these grounds, and I think that the record falls short of showing anything that would compel a contrary finding. Going back to the waiver, this court's decision in Gonzales and Morales as Gerdau, I think foreclosed any argument that she would be eligible for a waiver because she did not wait the 10 years prior to seeking readmission. Thank you, Counsel. Thank you very much, Your Honors. And, Mr. Paul, you may have a minute for rebuttal. Thank you very much. First, by way of citation that you were asking for, page 1304 and specifically at note 2. I'm sorry, what was that again, Counsel? 748? 748F2nd, 1304, and then page 1306, footnote 2. Regarding whether or not Ms. Carrillo is eligible for a waiver, now that it's been more than 10 years after departure, I don't think that there is any case law that resolves that, that specifically addresses and holds on that issue. But I think the Torres-Garcia, for example, the dicta, in the matter of the Board's decision in Torres-Garcia, for example, specifically says that, quote, a request for a waiver made less than 10 years after last departure cannot be granted. So I suppose they don't resolve the issue, but they certainly indicate that they're thinking that the trigger is the date of the departure, and 10 years after that the waiver can be approved. That same language also appears in Morales' skirto. With respect to the unlawful presence, the question about unlawful presence, I think it's very clear that we cannot count the unlawful presence prior to April 1, 1997. In the first place, the Board clearly did not regard that as important. There's no factual finding that she had unlawful presence prior to April 1, 1997. Furthermore, the official position of the Immigration Service in this Neufeld memo that's cited in our briefing is that unlawful presence does not accrue prior to April 1, 1997. Unlawful presence is a new term in IAERA. That term becomes effective April 1, and so it's only time after April 1, 1997, that gets counted as, quote, unlawful presence. Counsel, if you could wrap up over your time limit. And if I can just make one final point about whether or not Ms. Carrillo was, in fact, deported from the United States. She testified that she departed in the voluntary departure time. The immigration judge found that testimony credible and accepted that testimony. Under the specific language in the decision of the immigration judge, that order is in lieu of deportation, and it never becomes an order of deportation. The immigration judge made no finding to the contrary, and so the Board's assumption that she was deported is just incorrect, and she's not inadmissible under C-2. Thank you, Counsel. Thank you very much. We appreciate your arguments in this difficult case. The case is submitted, and we will take about a ten-minute break before hearing the remainder of the calendar. All rise.
judges: Benitez, Graber, Smith M.